IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:20-cr-00139-WKW-SRW ) |
| MARQUIS ANTONIO KEEAUN SCOTT, | ) ) ) ) |
| Defendant. | ) |

REPORT AND RECOMMENDATION

Before the court are Defendant Marquis Antonio Keeaun Scott's motion to dismiss the indictment (Doc. 20) and the Government's response (Doc. 31). For the reasons set forth below, the court concludes that the motion to dismiss is due to be granted and the indictment should be dismissed without prejudice.

**I.    Introduction**

Defendant is charged in a five-count indictment with possession of a firearm by a convicted felon. (Doc. 1). The indictment charges that Defendant illegally possessed firearms on or about November 4, 2015 (Counts One and Two); November 19, 2015 (Count Three); November 25, 2015 (Count Four); and January 6, 2016 (Count Five); in Coffee County, within the Middle District of Alabama, all in violation of 18 U.S.C. § 922(g)(1). *Id*. at 1-3.

Defendant contends that the indictment should be dismissed because the Government violated the Defendant's Sixth Amendment constitutional right to a speedy trial based on the Government's allegedly willful inaction after he was indicted, in combination with inordinate pre-

indictment delay. (Doc. 20, at 1, 11).[1] The Government maintains that Defendant has failed to prove that he has been prejudiced by the delay to bring him to trial. (Doc. 31, at 1).

## II.     Background and Procedural History[2]

Between 2015 and 2018, the Bureau of Alcohol Tobacco Firearms and Explosives ("ATF"); agents of the Alabama 12th Judicial Drug Task Force; the Coffee County, Alabama Sheriff's Department; and the Enterprise, Alabama Police Department ran a joint multi-agency "sting" operation and investigation targeting over 20 individuals, including Defendant, for firearms and narcotics trafficking and conspiracy.[3] (Doc. 31, at 1). Between November of 2015 and January of 2016, Defendant and others allegedly sold firearms of various makes and models and live ammunition to law enforcement officers who were using a confidential informant ("CI"). *Id*. The Government represents that law enforcement officers made five controlled buys of firearms from Defendant and others, that each controlled buy was attributed to Defendant in some way, and that twelve of the firearms purchased were directly attributable to Defendant. *Id*. at 1-2. The controlled buys were recorded. *Id*. at 1.

---

[1] Although Defendant references the Speedy Trial Act (18 U.S.C. §§ 3161–3174) on the first page of his motion (Doc. 20, at 1), he makes no substantive argument concerning the Act in his brief, and the court deems this ground for relief abandoned. *See, e.g., Mesa Air Group, Inc. v. Delta Air Lines*, 573 F.3d 1124, 1131 (11th Cir. 2009). Even if this ground were not abandoned, the Act requires a criminal trial to begin no later than 70 days after a defendant is charged by indictment or complaint, or makes his initial appearance, whichever date last occurs. 18 U.S.C. § 3161(c)(1); *Bloate v. United States*, 559 U.S. 196, 198-99 (2010). Defendant made his initial appearance before the court on March 22, 2022 (Doc. 16), and his trial is scheduled for May 16, 2022, 55 days later. (Doc. 33). Because this period of time is well within the 70-day limit, there is no Speedy Trial Act violation. "A delay of sufficient length may be a constitutional violation, even though it is not a violation of the Speedy Trial Act." *United States v. Twitty*, 107 F.3d 1482, 1490 (11th Cir. 1997).

[2] These are the facts only for the purposes of the court's ruling on the pending motions. The facts are gleaned from Defendant's motion to dismiss (Doc. 20) and exhibits thereto, and the Government's response (Doc. 31).

[3] The joint investigation purportedly continued into 2019, including forensic reports narcotics analysis. (Doc. 31, at 1 n.1).

On April 6, 2016, Defendant was arrested by state authorities. (Doc. 31, at 2; Doc. 20, at 2). On September 28, 2017, a state grand jury returned an indictment charging Defendant with one count of trafficking cocaine (28 grams or more but less than 500 grams), one count of possession of drug paraphernalia, and one count of possession of marijuana for personal use. (Doc. 20-1). Defendant was convicted on August 15, 2018 of trafficking cocaine. (Doc. 20, at 2; Doc. 20-2). On October 2, 2018, Defendant was sentenced to life without parole, which was later amended to a life sentence with the possibility of parole. (Doc. 20, at 2; Doc. 20-3). According to Defendant, shortly after his sentencing hearing, he was transported to Kilby Correctional Facility for processing and then moved to Donaldson Correctional Facility in either late 2018 or early 2019, where he remained until March 2022. (Doc. 20, at 2). The Government submits that at the time of Defendant's sentencing it was unaware of his location, due, in part, to an alleged change in computer software at the Coffee County jail. (Doc. 31, at 2).

On September 15, 2020, a federal grand jury indicted Defendant on five counts of being a felon in possession of a firearm, in violation of Title 18 U.S.C. § 922(g)(1). (Doc. 1). On September 23, 2020, the United States Marshals Service ("USMS") lodged a detainer with the Alabama Department of Corrections Detainer Division, identifying Defendant as an unsentenced prisoner in ADOC's custody. (Doc. 5). The detainer advised that an arrest warrant had been issued by the court and instructed that "[i]f the subject is sentenced while this detainer is in effect, please notify this office at once." *Id*; Doc. 19. The detainer requested that a copy be provided to Defendant and a faxed copy of receipt of detainer be sent to the USMS's office. (Doc. 5).

According to the Government, at the time the federal indictment was returned, the Government erroneously believed that Defendant might be out in the community. (Doc. 31, at 3). The Government says that Senior Special Agent Richie Carpenter of the ATF filed a USM 560 or delegation of apprehension with the USMS, believing that he would be informed when Defendant

3

was apprehended by the USMS. *Id*. The Government admits that it was mistaken about Defendant's being out in the community and that it should have known that Defendant was in ADOC custody. *Id*.

On March 2, 2022, the District Court entered a sealed order inquiring about the status of this case. (Doc. 4). On March 3, 2022, the Government received information indicating that Defendant was at Donaldson Correctional Facility within the ADOC system, and the Government subsequently filed a writ of habeas corpus ad prosequendum. (Doc. 6; Doc. 31, at 3). The writ was returned unexecuted on March 8, 2022. (Doc. 9). On March 9, 2022, the Government filed a second writ of habeas corpus ad prosequendum for Defendant at Fountain Correctional Facility within the ADOC system. (Doc. 10). The writ was executed on March 11, 2022. (Doc. 11). On March 22, 2022, Defendant appeared before the Magistrate Judge for his initial appearance and arraignment via video teleconference. (Doc. 16). On the same date, Defendant asserted his right to a speedy trial. *Id*.; Doc. 20, at 3. Defendant indicates that he had been unaware of the charges against him and asserted his right to a speedy trial at the first opportunity he had. (Doc. 20, at 11). The trial in this case is set for May 16, 2022. (Doc. 33).

### III.   Legal Standards

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]" U.S. Const. amend. VI. Courts apply four factors to determine whether a defendant's right to a speedy trial has been violated: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *Doggett v. United States*, 505 U.S. 647, 651 (1992) ("Our cases … recogniz[e] the relevance of four separate enquiries: whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right

to a speedy trial, and whether he suffered prejudice as the delay's result."). However, if the defendant is able to prove that the first three factors "weigh heavily against the Government, the defendant need not show actual prejudice (the fourth factor) to succeed in showing a violation of his right to a speedy trial." *United States v. Ingram*, 446 F.3d 1332, 1336 (11th Cir. 2006).

IV.  Discussion

    A.  **Length of Delay**

The first factor—the length of the delay—is "actually a double enquiry." *Doggett*, 505 U.S. at 651. This factor acts as a "triggering mechanism" that must be satisfied for a court to proceed to examine the other factors. *Barker*, 407 U.S. at 530. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id*. "[T]o trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay … . If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *Doggett*, 505 U.S. at 651-52 (citations omitted). The "latter enquiry is significant to the speedy trial analysis because … the presumption that pretrial delay has prejudiced the accused intensifies over time." *Id*. at 652. Thus, "[t]he length of the delay itself weighs against the government, incrementally increasing in weight as the delay becomes increasingly protracted." *United States v. Villarreal*, 613 F.3d 1344, 1350 (11th Cir. 2010). "Delays exceeding one year are generally found to be 'presumptively prejudicial.'" *Ingram*, 446 F.3d at 1336 (citations omitted). Here, the Government concedes that the delay between Defendant's indictment and arrest has exceeded one year and is therefore presumptively prejudicial. (Doc. 31, at 4). "If a defendant proves the length of the delay is sufficient to trigger the *Barker* analysis, however, that does not

necessarily mean that factor weighs heavily against the Government; the two inquiries are separate." *United States v. Oliva*, 909 F.3d 1292, 1298 (11th Cir. 2018).

Defendant argues that the length of delay, including pre-indictment delay, should weigh heavily against the Government. (Doc. 20, at 4-5). He contends that the Government did not attempt to bring him to court to answer the charges it initiated for 17 months, which is five months over the bare minimum needed to satisfy the threshold showing of presumptive prejudice. *Id*. Defendant maintains that this delay is in addition to the nearly five-year passage of time between the date of the alleged offenses and the date on which the indictment actually was filed. *Id*. at 5. Specifically, Defendant says, based on the allegations in the indictment, the Government waited four years, 10 months, and 11 days before indicting him on Counts One and Two; waited four years, 9 months and 27 days with respect to Count Three; waited four years, 9 months and 21 days for Count Four; and waited four years, 8 months, and 9 days for Count Five. *Id*. at 9-10.

"[F]or Sixth Amendment speedy trial purposes, only the time between indictment or arrest and trial is considered." *United States v. Hatcher*, 300 F. App'x 659, 662 (11th Cir. 2008); *Betterman v. Montana*, 578 U.S. 437, 441 (2016) ("The Sixth Amendment's Speedy Trial Clause … . does not attach until … a defendant is arrested or formally accused."); *United States v. Lovasco*, 431 U.S. 783, 788 (1977) (stating that with regard to a lengthy preindictment delay, "as far as the Speedy Trial Clause of the Sixth Amendment is concerned, such delay is wholly irrelevant"). However, in the Eleventh Circuit, "once the Sixth Amendment's speedy trial analysis is triggered, it is appropriate to consider inordinate pre-indictment delay in determining how heavily post-indictment delay weighs against the Government." *Ingram*, 446 F.3d at 1339. Thus, a "two-year post-indictment delay in [one] case weighs more heavily than a two-year delay in another case might if, in that case, the post-indictment delay began shortly after the allegedly criminal acts occurred. *Id*. (alteration added). However, where pre-indictment delay is not

inordinate, that time is not counted in the speedy trial analysis. *Oliva*, 909 F.3d at 1304-05. Inquiry into the length of delay will be "dependent upon the peculiar circumstances of the case." *Barker*, 407 U.S. at 530-31. For example, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Id*. at 531.

     Here, Defendant was federally charged almost five years after the date of the alleged illegal conduct.[4] Defendant argues that the offenses charged do not involve complicated facts or complex investigation, as the alleged offenses—felon in possession of a firearm charges—are not complex. (Doc. 20, at 10). The Government contends that Defendant's case is more complex than appears in the indictment, as the investigation involved multiple state and federal agencies, including investigations into a conspiracy to sell firearms and distribute narcotics from both in and outside of the Middle District of Alabama. (Doc. 31, at 9).

     While the court accepts that this case may be more complex than appears from the indictment, it finds that the almost five years' pre-indictment delay was still "inordinate" and will consider the pre-indictment delay as part of the overall delay. *Oliva*, 909 F.3d at 1304 ("Pre-indictment delay is accounted for if it is 'inordinate.'"). Defendant was arrested by state authorities on April 6, 2016; indicted by a state grand jury on September 28, 2017; and convicted for trafficking cocaine on August 15, 2018. Defendant was not federally indicted for being a felon in possession of firearms until over two years after his state conviction. Although courts are less tolerant of delay in the investigation of ordinary street crimes, as compared with "a serious, complex conspiracy charge," *Barker*, 407 U.S. at 531, the Government does not cite specific facts explaining why it took nearly five years to indict Defendant on rather simple charges of being a felon in possession of firearms, but only maintains vaguely that the "investigation included

---

[4] The statute of limitations for the offenses charged in the indictment is five years. *See* 18 U.S.C. § 3282(a).

multiple state and federal agencies including investigations into a conspiracy to sell firearms and distribute narcotics coming from in and outside of the Middle District of Alabama." (Doc. 31, at 9). In fact, the Government acknowledges that all of the controlled buys were recorded and that this evidence was preserved and in its possession from the time of the offenses charged. (Doc. 31, at 1, 5, 9). Also, Defendant was the lone defendant in the indictment.

The court concludes that the pre-indictment delay was inordinate and that, when this period of time is incorporated into the total, the delay is around six and one half years.[5] Given the length of time and the nature of the offenses charged, the court finds that the length of delay weighs heavily against the Government. *See United States v. Lopez-Giraldo*, No. 1:17-CR-395, 2021 WL 6804068, at *8 (N.D. Ga. Nov. 4, 2021), *report and recommendation adopted*, No. 1:17-CR-395-MLB, 2021 WL 6072449 (N.D. Ga. Dec. 23, 2021) (finding that while the investigation, charging, arrests, and extradition in the case were complex, the delay was still substantial and weighed heavily against the government where, after adding the four-year pre-indictment delay to the post-indictment delay, the delay totaled nearly seven years). The court now turns to the next *Barker* factor.

      **B.**    <u>**Reason for the Delay**</u>

"Closely related to length of delay is the reason the government assigns to justify the delay." *Barker*, 407 U.S. at 531. As to the second *Barker* factor, "[t]he burden is on the government to explain the cause of pre-trial delay." *United States v. Machado*, 886 F.3d 1070, 1080 (11th Cir. 2018). Courts allocate different weight to different reasons for delay. *Villarreal*, 613 F.3d at 1351. The Eleventh Circuit has stated:

---

[5] The time from the offenses to the indictment span from four years, 10 months, and 11 days to four years, 8 months, and 9 days. The time from the indictment, September 15, 2020, to the current trial date, May 16, 2022, spans 20 months. *Ingram*, 446 F.3d at 1337 n.3 ("The relevant delay is the time between the date of the indictment and the trial date.").

> An intentional attempt to delay trial in order to hinder the defense is "weighted heavily against the government." In contrast, a valid excuse, such as a missing witness, justifies reasonable delay. Negligence falls between these two extremes. It is "more neutral" and "should be weighted less heavily" than bad-faith acts. But negligence "nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Indeed, "it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." Our "toleration of negligence varies inversely with the length of the delay" that the negligence causes. Analyzing the second factor, therefore, overlaps some with the first: the length of the delay impacts our determination of whether the Government's negligence weighs heavily against it.

*Oliva*, 909 F.3d at 1301-02 (internal citations omitted); *United States v. Frederick*, 789 F. App'x 123, 128 (11th Cir. 2019) ("[W]e become less tolerant of delay caused by negligence the longer it lasts.") (citation omitted). "A government's inability to arrest or try a defendant because of the defendant's own evasive tactics constitutes a valid reason for delay. But the government's failure to pursue a defendant diligently will weigh against it, more or less heavily depending on if the government acted in good or bad faith." *Villarreal*, 613 F.3d at 1351 (citations omitted).

Defendant contends that the combination of the Government's gross negligence and the inordinate pre-indictment delay support a finding that the second *Barker* factor weighs heavily against the Government, since if he proceeds to trial he will be defending against charges allegedly committed between 76 and 78 months before the date of trial. (Doc. 20, at 10-11). Defendant also argues that he had no part in the delay and did not attempt to evade prosecution. *Id*. at 6. Defendant maintains that, after it filed the indictment, the Government filed a detainer eight days later, knew where he was, and could have brought him to court then via a writ but did not. *Id*.

The Government concedes that it could have and should have been more diligent in bringing Defendant before the court, but argues that its failure to do so was due to negligence that should not weigh heavily against it. (Doc. 31, at 7). The Government contends that it mistakenly believed that the USMS was looking for or trying to locate Defendant. *Id*. at 8. It maintains that the detainer went unintentionally unnoticed by the Assistant United States Attorney assigned to

9

the case, and that ATF Agent Carpenter was not informed that Defendant had been located and was under the impression that he would be notified once Defendant was located. *Id*. The Government states that it was an administrative failure on its part which caused no writ to be filed appropriately to bring Defendant into federal custody. *Id*. The Government contends that it had no reason to delay Defendant's trial deliberately or to act in bad faith, citing the fact that the evidence produced through discovery to Defendant was all in the Government's possession at the time of Defendant's indictment. *Id*. at 9. Neither party has made a showing of bad faith or intentional delay by the Government.

As to the reasons for *post-indictment* delay, the court finds this case to be similar to *United States v. Clark*, 83 F.3d 1350 (11th Cir. 1996). In *Clark*, the defendant was not arrested until over 17 months after the indictment. *Id*. at 1352. Neither the defendant nor his counsel was aware of the federal indictment until the defendant's arrest. *Id*. Although the defendant continuously resided at the same apartment listed on the arrest warrant and attended classes at Alabama State University in Montgomery, the only attempt to locate him prior to the date of his arrest was made by a city police officer who received no answer when he knocked on the defendant's apartment door. *Id*. The Montgomery Police Department stopped efforts to locate the defendant following this attempt, apparently believing that the U.S. Marshal's office would take over. *Id*. The Eleventh Circuit found that the delay was due to the negligence of the government in failing to exercise appropriate diligence in pursuing the defendant, which weighed against the government, but not heavily. *Id*. at 1353-54. In reaching its holding, the Eleventh Circuit favorably cited *United States v. Beamon*, 992 F.2d 1009, 1015 (9th Cir. 1993), which held that a delay between 17 and 20 months due to government negligence did not weigh heavily against the government. *Clark*, 83 F.3d at 1354; *see also Oliva*, 909 F.3d at 1305-06 (citing *Clark* and holding that a 23-month delay due to negligence did not weigh heavily against the government).

If this court were solely evaluating the reasons for post-indictment delay, it would find, based on the facts in this case, that while the second *Barker* factor weighs against the Government, it does not weigh heavily against it. However, having determined that the pre-indictment delay was inordinate, the court finds—based upon the length of the pre- and post-indictment delays combined (which amount to a six and one-half year delay); the Government's negligence; the nature of the charges; and the fact that a detainer had been filed which notified the Government that Defendant was in ADOC's custody, the second *Barker* factor weighs heavily against the Government.

### C. Assertion of Speedy Trial Right

Under the third *Barker* factor, "if the defendant did not learn about the indictment until his arrest, and afterwards promptly asserted his speedy trial right, then this factor weighs heavily against the government." *United States v. Spaulding*, 322 F. App'x 942, 947 (11th Cir. 2009); *United States v. Cruz*, 681 F. App'x 819, 823 (11th Cir. 2017). Here, Defendant asserted his right to a speedy trial at his initial appearance and arraignment. The Government concedes that Defendant asserted his right to a speedy trial as soon as he knew of the indictment, and that the third factor has therefore been met. (Doc. 31, at 6). Accordingly, the court finds that this factor weighs heavily against the Government.

### D. Prejudice to the Defendant

Where the first three factors weigh heavily against the government, a defendant need not demonstrate actual prejudice to succeed on his speedy trial claim. *United States v. Davenport*, 935 F.2d 1223, 1239 (11th Cir. 1991) ("In this circuit, a defendant generally must show actual prejudice unless the first three factors in *Barker* all weigh heavily against the government."). Given that the court has found that the three *Barker* factors weigh heavily against the Government, the court concludes that Defendant's motion to dismiss the indictment is due to be granted.

Nevertheless, should this court be in error in its evaluation of the first three *Barker* factors, it concludes that Defendant has not demonstrated actual prejudice. Defendant does not address the issue of whether he was actually prejudiced by the delay, and the Government contends that Defendant cannot show that he was prejudiced.

"Prejudice to the defendant is evaluated in view of the three interests the right to a speedy trial was designed to protect: '(1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired.'" *United States v. Schlei*, 122 F.3d 944, 988 (11th Cir. 1997) (citation omitted). The third interest is the most important "'because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious.'" *Id.* (citation omitted).

As to the first interest, Defendant was incarcerated by the state during the post-indictment delay and was serving a life sentence at an ADOC facility. (Doc. 20 at 2). Whether he was in federal custody or state custody, Defendant still would have been in custody. *United States v. Knight*, 562 F.3d 1314, 1324 (11th Cir. 2009) (no prejudice where had the defendant not been in federal custody awaiting trial, he would have returned to state imprisonment); *United States v. Mitchell*, 374 F. App'x 859, 866-67 (11th Cir. 2010) (noting that the defendant spent a portion of his time in custody on state charges and therefore would have been incarcerated regardless of his federal indictment); *United States v. Grant*, 538 F. Supp. 3d 1234, 1241 (M.D. Ala. 2021) ("Grant cannot show oppressive pretrial incarceration because he was in State custody for thirteen months of the seventeen-month delay.").

With respect to the second interest, Defendant indicates that he did not know of the federal charges pending against him until he was arrested on the writ. (Doc. 20, at 11). Thus, Defendant cannot show that he suffered stress or anxiety concerning the charges during the post-indictment

12

delay. *Clark*, 83 F.3d at 1354. As to the third interest, Defendant does not address whether his defense may have been impaired. The Government asserts that it has appropriately preserved all discovery (including any *Brady* materials, if they exist), and that Defendant has chosen not to identify any specific detriment to his defense. (Doc. 31, at 5, 11). Indeed, Defendant has failed to allege any impairment to his defense resulting from delay. *United States v. Bibb*, 194 F. App'x 619, 623 (11th Cir. 2006) ("Bibb fails to identify what evidence was lost or what witnesses he could not locate. He merely makes a general allegation that the delay prejudiced his defense."). Accordingly, based upon the foregoing, Defendant has failed to show that he suffered actual prejudice.

**V.      Conclusion**

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Defendant's motion to dismiss the indictment (Doc. 20) be GRANTED and that the indictment (Doc. 1) be DISMISSED WITHOUT PREJUDICE. It is further

ORDERED that the parties shall file any objections to the said Recommendation on or before **May 9, 2022**. Any objections filed must specifically identify the findings in the Magistrate Judge's recommendation to which the party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the magistrate judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE, on this the 27th day of April, 2022.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge